THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| DP CREATIONS, LLC d/b/a BOUNTIFUL BABY, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ADOLLY.COM, an unknown Chinese business entity; SHENZHEN CITY AIDUOLA HUALIANWANG, LTD. d/b/a ADOLLY US, an unknown Chinese business entity; HUIZHOU CITY OTARD GIFTS, LTD. d/b/a OTARDDOLLS, an unknown Chinese business entity; RUGAO LUOEN TRADING CO., LTD. d/b/a REBORN DOLL GALLERY, an unknown Chinese business entity; and NANJING TIANZENG GIFTS, LTD. d/b/a NPK, an unknown Chinese business entity,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>• **GRANTING IN PART AND DENYING IN PART PLAINTIFF'S [57] SECOND MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>• **AMENDING [43] ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION**<br><br>Case No. 2:22-cv-00230-DBB<br><br>District Judge David Barlow |

Before the court is Plaintiff DP Creations, LLC doing business as Bountiful Baby's ("Bountiful Baby") Second Motion for Default Judgment and Permanent Injunction.[1] Bountiful Baby renews its motion for default judgment against Defendants Shenzhen City Aiduola Hualianwang, Ltd., doing business as Adolly US ("AUS"), Huizhou City Otard Gifts doing business as OtardDolls ("OTD"), Rugao Luoen Trading Co., Ltd. doing business as Reborn Doll Gallery ("RDG"), and Nanjing Tianzeng Gifts, Ltd. doing business as NPK ("NPK")

---

[1] Second Mot. for Default J. & Permanent Inj. ("Second Mot. for Default J."), ECF No. 57, filed Apr. 13, 2023.

(collectively "Defendants"). For the reasons below, the court grants in part and denies in part Bountiful Baby's second motion for default judgment.

## BACKGROUND

Bountiful Baby is a Utah company that sells kits and supplies to create lifelike infant dolls known as "reborn dolls."[2] To develop the unique copyrighted sculptures, Bountiful Baby uses 3D scanners, professional photography equipment, and 3D printers.[3] It sells individual sculptures and kits.[4] Bountiful Baby does not license the copyrighted sculptures at issue here.[5]



**Exemplary reborn doll created by Bountiful Baby**[6]

---

[2] Compl. ¶¶ 3–4, 16, ECF No. 1, filed Mar. 30, 2022. *See DP Creations, LLC v. Reborn Baby Mart*, No. 2:21-cv-00574, 2021 WL 5826438, at *1 (D. Utah Dec. 8, 2021) ("Reborn dolls are intended to be indistinguishable from a real baby, and Bountiful Baby's dolls are particularly known for their uncanny realism.").

[3] Compl. ¶ 2; Decl. Nevin Pratt ("Pratt Decl.") ¶¶ 4–5, 17, ECF No. 48, filed Mar. 16, 2023.

[4] Pratt Decl. ¶¶ 16–17 (*e.g.*, the Joseph Asleep kit contains a Joseph Asleep Head, Joseph Arms, and Joseph Legs).

[5] *Id.* ¶ 18.

[6] Compl. ¶ 4 (citing https://bountifulbaby.com/collections/full-vinyl-kits/products/6076).

Defendants are four foreign businesses that sell reborn dolls.[7] Customers can purchase dolls or kits online and ship them to the United States.[8]

On March 30, 2022, Bountiful Baby filed its Complaint, asserting that Defendants committed twenty-four counts of copyright infringement and seeking a temporary restraining order ("TRO").[9] The court granted the TRO on April 13, 2022.[10] The day before the TRO expired, the court granted Bountiful Baby a preliminary injunction.[11] After the Clerk of Court entered a default certificate,[12] Bountiful Baby moved for default judgment and a permanent injunction on September 8, 2022.[13] The court granted in part and denied in part the motion on November 2, 2022.[14] The court granted the motion as to Adolly.com ("ADC") and denied the motion as to the remaining defendants.[15] Bountiful Baby moved for leave to file a second motion for default judgment on December 29, 2022.[16] The court granted it leave to do so.[17] On April 13, 2023, Bountiful Baby filed its Second Motion for Default Judgment and Permanent Injunction.[18]

## DISCUSSION

Bountiful Baby seeks default judgment, a permanent injunction, and attorney's fees and costs. The court first discusses default judgment.

---

[7] *Id.* ¶¶ 9–12 (AUS, OTD, RDG, and NPK).
[8] *Id.* ¶¶ 9–12, 53–55.
[9] *Id.* ¶¶ 59–274; *see* 17 U.S.C. § 106 *et seq*.
[10] ECF No. 11.
[11] ECF No. 30.
[12] ECF No. 32.
[13] ECF No. 33.
[14] Order Granting in Part & Denying in Part Mot. for Default J. ("Default J. Order"), ECF No. 43, filed Nov. 2, 2022.
[15] *Id.* at 23.
[16] ECF No. 46.
[17] ECF No. 56.
[18] *See* Second Mot. for Default J.

## I.    Default Judgment

To grant default judgment, the court must ensure that jurisdiction exists and that default judgment is appropriate. "A judgment is void if the court that enters it lacks jurisdiction over either the subject matter of the action or the parties to the action."[19]

### A.    The Court Has Subject Matter Jurisdiction and Can Exercise Personal Jurisdiction Over OTD.

"[W]hen entry of a default judgment is sought against a party who has failed to plead or otherwise defend, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties."[20] The court has subject matter jurisdiction because the claims fall under federal copyright law.[21] "In reviewing its personal jurisdiction, the court does not assert a personal [jurisdiction] defense of the parties; rather, the court exercises its responsibility to determine that it has the power to enter the default judgment."[22] "The plaintiff has the burden of proving that the court has [personal] jurisdiction."[23] "[A] movant 'need only make a *prima facie* showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials.'"[24]

Bountiful Baby contends the court can assert personal jurisdiction over Defendants in two ways. It first argues that AUS and RDG consented to jurisdiction in Utah. Next, it argues that

---

[19] *Old Dominion Freight Line, Inc. v. Infuze, LLC.*, No. 1:22-cv-00064, 2022 WL 3139227, at *1 (D. Utah Aug. 5, 2022) (quoting *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986)).

[20] *Williams*, 802 F.2d at 1203.

[21] *See* Compl. ¶¶ 59–274; *Minden Pictures, Inc. v. Buzznick, LLC*, No. 2:22-cv-00369, 2023 WL 2243177, at *3 (D. Utah Feb. 27, 2023).

[22] *Williams*, 802 F.2d at 1203.

[23] *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1281 (10th Cir. 2020), *cert. denied*, 141 S. Ct. 2793 (2021) (cleaned up).

[24] *United States Sec. & Exch. Comm'n v. Hartman Wright Grp., LLC*, No. 19-cv-02418, 2022 WL 669758, at *3 (D. Colo. Mar. 7, 2022), *R. & R. adopted*, No. 19-cv-02418, 2022 WL 860617 (D. Colo. Mar. 23, 2022) (quoting *Dennis Garber & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 773 (10th Cir. 1997)).

Rule 4(k)(2) of the Federal Rules of Civil Procedure permits the court to assert personal jurisdiction over OTD and NPK. The court discusses each argument in order.

### 1.    AUS and RDG Did Not Consent to Jurisdiction in Utah.

Bountiful Baby argues AUS and RDG consented to jurisdiction when they submitted counter-notifications to Amazon. Under 17 U.S.C. § 512(g) (the "counter-notification provision"), "a service provider who acts expeditiously to remove or disable access to allegedly infringing material upon notice of an infringement claim is not liable for damages resulting from the infringement."[25] Should the subscriber who owns the removed material submit a counter-notification stating a "good faith belief that the material was removed or disabled as a result of mistake or misidentification[,]" the provider may restore the material.[26] The subscriber must also consent to jurisdiction in the federal judicial district where the subscriber's address is found, or for subscribers outside the United States, where the "service provider may be found[.]"[27]

AUS and RDG sell reborn dolls on Amazon.com.[28] Before litigation, Bountiful Baby submitted notices of copyright infringement to Amazon claiming that certain AUS and RDG products infringed Bountiful Baby's copyrights. AUS and RDG then submitted counter-notifications pursuant to statute.[29] Each notice stated: "I am located outside of the United States and I consent to the jurisdiction of any judicial district in which Amazon may be found."[30]

---

[25] *Wright v. Doe*, No. 22-cv-300, 2022 WL 2764901, at *1 (N.D. Okla. July 15, 2022) (citing 17 U.S.C. § 512(c)(1)(C)).
[26] 17 U.S.C. § 512(g)(3)(C).
[27] *Id.* § 512(g)(3)(D).
[28] Compl. ¶¶ 9, 11.
[29] *See* Ex. 1, ECF No. 49-1, filed Mar. 16, 2023; Ex. 2, ECF No. 49-2, filed Mar. 16, 2023.
[30] ECF No. 49-1; ECF No. 49-2.

Bountiful Baby's argument goes like this. A defendant may consent to personal jurisdiction even without minimum contacts. AUS and RDG filed counter-notifications that confirmed they are located outside the United States. As such, they consented to jurisdiction where Amazon "may be found." Amazon may be found in Utah because of the thousands of Amazon employees who work in Utah.[31]

As Bountiful Baby notes, a defendant may consent to personal jurisdiction.[32] AUS and RDG did so when they agreed to jurisdiction where the service provider may be found. In this case, the service provider is Amazon.[33] Consequently, the issue is whether Amazon "may be found" in Utah.

The Copyright Act does not define "may be found." Yet this phrase appears in the federal venue provision for copyright actions. "Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or *may be found*."[34] Venue is therefore defined by where the relevant party may be found. In the copyright infringement context, courts have concluded that venue and personal jurisdiction issues "are essentially identical."[35] "A defendant 'may be found' in a district in

---

[31] Second Mot. for Default J. 4–5 (citing Ex. 3, Decl. of Brian N. Platt ("Platt Decl."), ECF No. 49-3, filed Mar. 16, 2023).

[32] *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011) ("A person may submit to a State's authority in a number of ways.").

[33] *See* 17 U.S.C. § 512(k)(1) ("[T]he term 'service provider' means a provider of online services or network access[.]").

[34] 28 U.S.C. § 1400(a) (emphasis added).

[35] *Relaximals, Inc. v. Brentwood Originals, Inc.*, No. 19-cv-02721, 2020 WL 1529179, at *3 (D. Colo. Mar. 31, 2020); *see Triple A P'ship v. MPL Commc'ns, Inc.*, 629 F. Supp. 1520, 1522 (D. Kan. 1986) ("In a copyright action, the standards for determining whether the court has personal jurisdiction over the defendant and whether venue is proper are identical.").

which he could be served with process; that is, in a district which may assert personal jurisdiction over the defendant."[36]

"To establish personal jurisdiction . . . plaintiff[ must] . . . show, first, that jurisdiction is authorized under Utah law and, second, that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."[37] Utah's long-arm statute declares that "to ensure maximum protection to citizens of this state, [the statute] should be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[38] "[U]nder Utah law, the traditional two-step jurisdictional analysis effectively collapses into 'a single question: [does] the defendant[ ] have sufficient "minimum contacts" with the state of Utah to establish personal jurisdiction over [it]?'"[39]

"The Supreme Court has distinguished between two types of personal jurisdiction: general and specific."[40] The court assesses whether Bountiful Baby has made a prima facie showing under either type.

### (a)   General Jurisdiction

"A state court can exercise general jurisdiction over any claims against defendants who are 'essentially at home' there, as when an individual is domiciled in the State or a corporation is

---

[36] *Palmer v. Braun*, 376 F.3d 1254, 1259 (11th Cir. 2004); *accord Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co.*, 8 F.3d 441, 445 (7th Cir. 1993); *see Relaximals*, 2020 WL 1529179, at *3 (citation omitted); *Chalfant v. Tubb*, 453 F. Supp. 2d 1308, 1316 (N.D. Okla. 2006); *Elec. Realty Assocs., L.P. v. Paramount Pictures Corp.*, 935 F. Supp. 1172, 1176–77 (D. Kan. 1996).
[37] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).
[38] Utah Code § 78B-3-201(3).
[39] *Larada Scis., Inc. v. Pediatric Hair Sols. Corp.*, No. 2:18-cv-00551, 2023 WL 2043300, at *12 (D. Utah Feb. 16, 2023) (quoting *Rusakiewicz*, 556 F.3d at 1100).
[40] *Hood v. Am. Auto Care, LLC*, 21 F.4th 1216, 1221 (10th Cir. 2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 126–27 (2014)).

incorporated or has its principal place of business there[.]"[41] "Because general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts."[42] "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"[43] A foreign corporation can have "affiliations with the State [that] are so 'continuous and systematic' as to render [it] essentially at home in the forum State."[44]

Amazon is not incorporated in Utah.[45] Its principal place of business is not in Utah.[46] For this reason, Bountiful Baby must show that Amazon's contacts are so "continuous and systematic" that it is "at home" in Utah. It attempts to do so by asserting Amazon has "thousands of operations employees and corporate employees in Utah[.]"[47]

"A court may not exercise general jurisdiction over a foreign corporation simply because it has continuous and systematic business contacts with the forum; the affiliations with the state must be so continuous and systematic as to render the corporation essentially at home in the forum state."[48] Bountiful Baby supplies a news article claiming that Amazon employs more than

---

[41] *Id.* (citations omitted).

[42] *Old Republic Ins. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904 (10th Cir. 2017) (citation omitted).

[43] *Daimler*, 571 U.S. at 137 (quoting Lea Brilmayer, Jennifer Haverkamp & Buck Logan, *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 735 (1988)).

[44] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

[45] Amazon.com, Inc., 2022 Annual Report ("Amazon Report") 1 (Feb. 3, 2023) (Amazon.com is incorporated in Delaware.).

[46] *See Garcia v. NutriBullet, L.L.C.*, No. 2:21-cv-09348, 2022 WL 3574699, at *1 (C.D. Cal. July 14, 2022) (Amazon.com's principal place of business is in the State of Washington.).

[47] Second Mot. for Default J. 5.

[48] *Ally Fin. Inc. v. Allypayments LLC*, No. 20-cv-02517, 2021 WL 4426950, at *3 (D. Colo. Sept. 27, 2021).

5,000 employees and 250 corporate employees in Utah.[49] A news article like this is an insufficient basis for jurisdiction.

Additionally, "the general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts."[50] The court must examine a corporation's activities "in their entirety[.]"[51] Specifically, "[a] corporation that operates in many places can scarcely be deemed at home in all of them."[52] Bountiful Baby offers no information as to any other state where Amazon operates. Amazon's 2022 Annual Report shows 1,541,000 full-time and part-time employees, with $514 billion in total sales.[53] While "facilities [and] thousands of employees . . . in [Utah] are certainly significant, those contacts do not suffice to make Amazon 'at home' in Utah."[54] In short, Amazon is not "so heavily engaged in activity in [Utah] 'as to render [it] essentially at home' in that State."[55]

### (b)   Specific Jurisdiction

Specific jurisdiction requires showing that a defendant has "'purposefully directed' his activities at residents of the forum" and "litigation results from alleged injuries that 'arise out of or relate to' those activities[.]"[56] Both elements "share the 'aim of . . . ensur[ing] that an out-of-state defendant is not bound to appear to account for merely random, fortuitous, or attenuated

---

[49] *See* Ex. 3, Platt Decl., at 3.
[50] *Daimler*, 571 U.S. at 127.
[51] *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 414 (2017).
[52] *Daimler*, 571 U.S. at 139 n.20.
[53] Amazon Report 4, 37.
[54] *Nautilus Ins. v. COA, Inc.*, No. 22 C 5997, 2023 WL 2933055, at *2 (N.D. Ill. Apr. 13, 2023); *see BNSF*, 581 U.S. at 405, 410 (no general jurisdiction in a state despite a railway company having over 2,000 miles of track and more than 2,000 workers).
[55] *BNSF*, 581 U.S. at 414.
[56] *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

contacts with the forum state.'"[57] "[E]ven when both requirements are met, the defendant may still avoid jurisdiction by establishing that doing so would 'offend traditional notions of fair play and substantial justice.'"[58]

The plaintiff has the burden to show that the court can assert jurisdiction over a defendant.[59] Yet Bountiful Baby offers no argument as to how specific personal jurisdiction is met here. The only facts offered about Amazon are the number of employees in Utah and how AUS and RDG use Amazon.com to market goods and accept payment.[60] The dearth of facts is not surprising considering that Amazon is not a party to the instant litigation. Bountiful Baby has not met its prima facie burden to show that minimum contacts exist such that Utah's "exercise of sovereignty over [Amazon] can be described as fair and just."[61]

Under the counter-notification provision, AUS and RDG consented to jurisdiction in the judicial district where Amazon "may be found." But Bountiful Baby has not shown that Amazon may be found in Utah. The court therefore cannot assert jurisdiction over AUS or RDG.

### 2. The Court Can Exercise Personal Jurisdiction over OTD Pursuant to Rule 4(k)(2).

Bountiful Baby argues the court can assert personal jurisdiction over OTD and NPK under Federal Rule of Civil Procedure 4(k)(2). This rule "has been described as a kind of federal long-arm statute[.]"[62] A court can exercise personal jurisdiction over a foreign defendant if the

---

[57] *Hood*, 21 F.4th at 1222 n.2 (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008)).

[58] *Larada Scis.*, 2023 WL 2043300, at *12 (quoting *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)).

[59] *Compañía de Inversiones Mercantiles*, 970 F.3d at 1282.

[60] Compl. ¶¶ 9, 11.

[61] *Dudnikov*, 514 F.3d at 1070.

[62] *Hetronic Int'l, Inc. v. Hetronic Germany GmbH*, 10 F.4th 1016, 1030 (10th Cir. 2021), *cert. granted sub nom. Abitron Austria GmbH v. Hetronic Int'l, Inc.*, 143 S. Ct. 398 (2022).

claim arises under federal law, "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction[,] and . . . exercising jurisdiction is consistent with the United States Constitution and laws."[63] The first element is straightforward. The claim at issue must pertain to a federal law. Next, the defendant cannot be subject to another state's general jurisdiction. "A defendant who wants to preclude use of Rule 4(k)(2) has only to name some other state in which the suit could proceed."[64] But "[w]hen a 'defendant . . . refuses to identify any other [forum state] where suit is possible, then the federal court is entitled to use Rule 4(k)(2),' so long as the exercise of federal jurisdiction satisfies Fifth Amendment due process standards."[65]

The first two elements are undisputed. The claims at issue arise under federal copyright law. And Bountiful Baby does not have to show Defendants are *not* subject to courts of general jurisdiction in the fifty states.[66] Defendants have not offered any other state where they are subject to jurisdiction. Accordingly, the court presumes that OTD is not subject to courts of general jurisdiction in any state.[67] The remaining question is whether this court's exercise of jurisdiction would comport with the United States Constitution.

---

[63] Fed. R. Civ. P. 4(k)(2).

[64] *Compañía de Inversiones Mercantiles*, 970 F.3d at 1284 (quoting *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), *as amended* (July 2, 2001)).

[65] *CGC Holding Co., LLC v. Hutchens*, 974 F.3d 1201, 1208–09 (10th Cir. 2020). "The Due Process Clauses of the Fourteenth and Fifth Amendments are virtually identical, and both 'were designed to protect individual liberties from the same types of government infringement.'" *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000) (quoting *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 945 (11th Cir. 1997)).

[66] *Compañía de Inversiones Mercantiles*, 970 F.3d at 1283 ("[T]he initial burden [is] on the defendant to identify a state in which the lawsuit could proceed.").

[67] *See, e.g.*, *RE/MAX, LLC v. Shenzhen Remax Co., Ltd*, No. 1:15-cv-02496, 2019 WL 1081039, at *5 (D. Colo. Jan. 18, 2019), *R. & R. adopted*, No. 15-cv-02496, 2019 WL 1437620 (D. Colo. Feb. 27, 2019).

"[T]he [c]ourt first analyzes Defendant[s'] contacts with the United States as a whole, not just the forum state . . . ."[68] The court must find Defendants "purposefully established minimum contacts" with the United States and the "assertion of personal jurisdiction . . . comport[s] with 'fair play and substantial justice.'"[69] "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"[70] For the "arising out of" element, "there must be an 'affiliation between the forum and the underlying controversy.'"[71] Last, the court asks whether personal jurisdiction would offend traditional notions of fair play and substantial justice.[72]

With the standard in mind, the court analyzes whether an exercise of personal jurisdiction over OTD satisfies constitutional due process. Bountiful Baby argues that OTD purposefully directed its activities at the United States, that its injuries arose from OTD's forum-related activities, and that jurisdiction would be fair and reasonable. In support, Bountiful Baby claims OTD intentionally copies protected doll sculptures, sells the sculptures on a U.S. top-level domain name,[73] targets U.S. residents by listing prices in U.S. dollars, offers free shipping to the United States, allows customers to select U.S. destinations for shipping, provides testimonials from U.S.-based customers, and makes actual sales to U.S. residents.[74] Specifically, Bountiful

---

[68] *Downrange Headquarters, LLC v. 2494924 Ontario Inc.*, No. 2:18-cv-00924, 2019 WL 6255087, at *4 (D. Utah Nov. 22, 2019) (citation omitted).

[69] *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

[70] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021); *see Old Republic*, 877 F.3d at 909. Defendants must have "take[n] some act by which it purposefully avail[ed] itself of the privilege of conducting activities" in [the forum state]." *Ford Motor Co.*, 141 S. Ct. at 1019 (cleaned up).

[71] *Old Republic*, 877 F.3d at 908 (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017)).

[72] *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 105 (1987).

[73] "A domain name identifies an address on the Internet. The rightmost component of a domain name—".com" in "Booking.com" [for example]—is known as the top-level domain." *United States Pat. & Trademark Off. v. Booking.com B. V.*, 140 S. Ct. 2298, 2303 n.1 (2020). OTD operated on the website "www.aliexpress.us". Ex. 4, Platt Decl.

[74] Second Mot. for Default J. 13; *see* Exs. 4–6, Platt Decl.

Baby offers evidence of about a dozen sales nationwide.[75] Next, it contends OTD's distribution of counterfeit dolls is a "but for cause of all of the infringement alleged in this case."[76] Finally, Bountiful Baby argues that jurisdiction comports with due process.

### (a)   OTD Purposefully Directs Activities at the United States.

The court has already determined it can exercise personal jurisdiction over ADC.[77] Since the relevant facts are similar, it is helpful to compare ADC's actions respecting Utah with those of OTD regarding the United States. Both entities appear on websites where customers can buy infringing dolls and ship to the United States.[78] The court previously noted ADC's four sales to Utah residents,[79] and OTD sold more units to U.S. residents.[80] Both of the relevant websites are interactive. "The intended market for business conducted through a website can be determined by considering the apparent focus of the website as a whole."[81] Here, aliexpress.com, the website selling OTD dolls appears to be "designed to attract or serve a [United States] audience."[82] It advertises prices in U.S. dollars, allows customers to ship to the United States for free, and includes testimonials from purported U.S.-based customers.[83] Simply put, aliexpress.com clearly allows U.S.-based customers to purchase goods directly from sellers in China.[84]

---

[75] *See* Platt Decl. ¶ 3.

[76] Second Mot. for Default J. 15.

[77] Default J. Order 23.

[78] Compl. ¶¶ 10, 22, 27, 32, 35, 39, 41, 44 (OTD sales on www.aliexpress.com); Ex. 6, Platt Decl.

[79] Default J. Order 4–5.

[80] *See* ECF No. 39, at 2; Platt Decl. ¶ 3.

[81] *RE/MAX*, 2019 WL 1081039, at *5 (quoting *Graduate Mgmt. Admission Council v. Raju*, 241 F. Supp. 2d 589, 598 (E.D. Va. 2003)).

[82] *Id.* (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 263 (4th Cir. 2002)).

[83] Second Mot. for Default J. 6–9; *see* Exs. 4–6, Platt Decl.

[84] *See Gucci Am., Inc. v. Alibaba Grp. Holding Ltd.*, No. 15-cv-3784, 2016 WL 6110565, at *1 (S.D.N.Y. Aug. 4, 2016).

The court's prior reasoning applies. "[I]t may be reasonably inferred that, because [OTD] was directly processing orders from and shipping orders to [the United States] . . . , [OTD] was aware of its continued availment 'of the privilege of conducting business' in [the United States]."[85] OTD "cannot expect to avail [it]sel[f] of the benefits of the internet-created world market that [it] purposefully exploit[ed] and profit[ed] from without accepting the concomitant legal responsibilities that such an expanded market may bring with it."[86] The court finds that OTD has purposefully directed its activities at U.S. residents.

### (b)   OTD's Activities Relate to Bountiful Baby's Claims.

Bountiful Baby's copyright infringement claims relate to OTD's activities. Because OTD sells counterfeit products that allegedly infringe Bountiful Baby's dolls, the sales are directly related to Bountiful Baby's causes of action.[87] As discussed earlier, OTD's activities are directed at the United States. For this reason, Bountiful Baby's "injuries ar[i]se from [OTD]'s forum-related activities."[88]

### (c)   Jurisdiction over OTD Would Be Fair and Reasonable.

Under the Fifth Amendment's Due Process Clause, an exercise of personal jurisdiction must also "comport with fair play and substantial justice."[89] A defendant might be able to "defeat federal jurisdiction" by establishing that the "'chosen forum will make litigation . . . gravely difficult and inconvenient' or, in other words, the forum district [would] burden[] the defendant

---

[85] *Edizone, LLC v. Asia Focus Int'l Grp., Inc.*, 196 F. Supp. 3d 1222, 1227 (D. Utah 2016) (citing *Burger King*, 471 U.S. at 476).

[86] *A.L. Enters., Inc. v. Sebron*, No. 2:08-cv-536, 2008 WL 4356958, at *2 (D. Utah Sept. 17, 2008) (citation omitted).

[87] *See DP Creations, LLC v. Reborn Baby Mart*, No. 2:21-cv-00574, 2022 WL 3108232, at *2 (D. Utah Aug. 3, 2022).

[88] *Hetronic Int'l*, 10 F.4th at 1031.

[89] *Old Republic*, 877 F.3d at 903.

with 'constitutionally significant inconvenience.'"[90] The court balances five non-exclusive factors to assess a defendant's burden litigating in Utah: "(1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond [its] state's borders."[91] "[N]o one factor is dispositive."[92]

The first factor weighs against jurisdiction. Bountiful Baby has not shown any sales or transactions involving Utah-based residents.[93] It argues instead that OTD has sold counterfeit goods based on copyrighted sculptures created by Utahns and based on Utahn models.[94] But Bountiful Baby fails to explain how sales outside of Utah creates contacts within Utah.

The second factor includes three sub-factors: "(a) the nature and extent and interstate character of the defendant's business, (b) the defendant's access to counsel, and (c) the distance from the defendant to the place where the action was brought[.]"[95] OTD's website is international in nature. United States customers can purchase goods and ship to the United States.[96] In fact, OTD offers free shipping for U.S.-based customers.[97] OTD apparently is represented by counsel to some degree, though it has not made an appearance.[98] For the third sub-factor, it is not entirely clear where OTD resides.[99] Assuming OTD resides in China, its location is not dispositive. "[I]n this age of instant communication and modern transportation,

---

[90] *Klein v. Cornelius*, 786 F.3d 1310, 1318 (10th Cir. 2015).
[91] *Id.* (citing *Peay*, 205 F.3d at 1212).
[92] *Downrange Headquarters*, 2019 WL 6255087, at *4 (discussing *Klein*, 786 F.3d at 1317–18).
[93] *See* ECF No. 39, at ¶ 2.
[94] Second Mot. for Default J. 15.
[95] *Peay*, 205 F.3d at 1212.
[96] *See* Ex. 6, Platt Decl.
[97] *See* Exs. 4–5, Platt Decl.
[98] *See* Platt Decl. ¶ 2 (counsel has not made an appearance for OTD).
[99] According to the online seller Alibaba.com, OTD is located in Guangdong province, China. "Company Overview," Alibaba.com, https://opackaging.en.alibaba.com/company_profile.html.

the burdens of litigating in a distant forum have lessened."[100] "[I]t is only in highly unusual cases that inconvenience will rise to a level of constitutional concern."[101] Accordingly, the second element weighs in favor of jurisdiction.

Judicial economy would be best served if this court resolved the matter. Rejecting jurisdiction would not promote an efficient resolution of Bountiful Baby's claims. The court is familiar with the matter. And the court is not aware of any other court with a claim to jurisdiction. The third factor therefore supports jurisdiction.

The next factor pertains to the "probable situs of the discovery proceedings and the extent to which the discovery proceedings will take place outside the state of the defendant's residence or place of business."[102] Bountiful Baby contends the bulk of discovery is in Utah where Bountiful Baby's business, artists, and models reside. Yet given the nature of the proceedings, discovery would likely occur in Utah and China. For this reason, the fourth factor is neutral.

The fifth factor weighs in favor of jurisdiction. A court must examine "the nature of the regulated activity in question and the extent of impact that the defendant's activities have beyond the borders of his state of residence or business."[103] Here, the regulated activity is the creation and shipping of counterfeit reborn dolls from China to the United States. As a result, the infringing activities have an impact beyond Utah's borders.[104]

---

[100] *Howard W. v. Providence Health Plan*, No. 2:20-cv-00463, 2021 WL 4459856, at *2 (D. Utah Sept. 29, 2021) (quoting *Peay*, 205 F.3d at 1212).
[101] *Peay*, 205 F.3d at 1212.
[102] *Id.*
[103] *Id.*
[104] *See New Mexico ex rel. Balderas v. Tiny Lab Prods.*, 448 F. Supp. 3d 1263, 1273 (D.N.M. 2020) (finding a significant impact beyond Utah's borders because the defendants' activities reached "all 50 states[.]").

In sum, the court's assertion of jurisdiction would not "make litigation so difficult and inconvenient that [OTD] unfairly w[ould] be at a severe disadvantage compared to [Bountiful Baby]."[105] Under Federal Rule of Civil Procedure 4(k)(2), the court can exercise personal jurisdiction over OTD.

### 3.   The Court Cannot Exercise Personal Jurisdiction Over NPK Pursuant to Rule 4(k)(2).

The court cannot assert personal jurisdiction over NPK. Bountiful Baby has not adequately shown that NPK purposefully directed its activities at the United States. Many of the facts to support purposeful direction mirror those for OTD. NPK sells counterfeit dolls on aliexpress.com.[106] The relevant website has a ".us" top-level domain, prices are in U.S. dollars, and customers can ship goods to the United States at no cost.[107] The key distinction between NPK and OTD is that Bountiful Baby has shown no sales or transactions to U.S.-based customers.[108] Bountiful Baby's contention that "NPK made actual sales of counterfeit products to U.S. residents" is unsupported.[109]

Neither of the cases cited by Bountiful Baby stand for the proposition that a court can exercise jurisdiction under Rule 4(k)(2) in the absence of any U.S. sales or transactions.[110] Indeed, the "bar is relatively high when assessing a defendant's contacts with the nation as a

---

[105] *Peay*, 205 F.3d at 1213.
[106] Compl. ¶ 12.
[107] *See* Exs. 7–8, Platt Decl.
[108] *See* Platt Decl. ¶ 3 (no transactions for NPK); ECF No. 39, at ¶ 2 (same).
[109] Second Mot. for Default J. 13.
[110] *See Great Bowery v. Best Little Sites*, 609 F. Supp. 3d 1240, 1255–56 (D. Utah 2022) (finding jurisdiction where defendants had a "decade-long relationship with [the U.S.-based plaintiffs] in which they each submitted tens of thousands of articles to the [plaintiff's] website and received payment for their work"); *Raju*, 241 F. Supp. 2d at 598 (finding that the defendant "did in fact ship materials in the United States").

whole under Rule 4(k)(2)."[111] The court previously concluded it could not assert personal jurisdiction over NPK when there was no evidence of sales in Utah.[112] It will not do so now merely because the forum has been expanded to the United States.

**B.    Default Judgment Is Proper Against OTD for Thirteen Counts of Willfull Infringement.**

"Default judgment is a harsh sanction."[113] It "must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party . . . . [T]he diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights."[114] Despite service of process and notice over a year ago, OTD has failed to appear or defend against Bountiful Baby's claims.[115] "Once default is entered, 'it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law.'"[116] Bountiful Baby is entitled to judgment if the Complaint and any record evidence support the claims and damages.

**1.    Claims**

Bountiful Baby alleges Defendants infringed twenty-four protected sculptures. Bountiful Baby meets its burden to show the court can assert personal jurisdiction only as to OTD, which allegedly infringed eighteen protected sculptures. As such, the court analyzes whether OTD infringed Bountiful Baby's eighteen sculptures.

---

[111] *Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-cv-00823, 2021 WL 3493094, at *9 (S.D. Cal. Aug. 6, 2021) (citation omitted); *see Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 462 (9th Cir. 2007) (discussing cases from the D.C. Circuit and the Fifth Circuit).
[112] Default J. Order 7.
[113] *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987).
[114] *Curne v. Liberty Mut. Ins.*, No. 21-3159, 2022 WL 1440650, at *3 (10th Cir. May 6, 2022) (unpublished) (quoting *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991)).
[115] *See* ECF No. 23.
[116] *Bixler v. Foster*, 596 F.3d 751, 762 (10th Cir. 2010) (quoting 10A Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)).

"Copyright infringement requires that the plaintiff prove two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"[117] Bountiful Baby has shown that it owns the United States Copyright Registration Numbers for the eighteen relevant sculptures.[118] As to the second element, the Copyright Act "enshrines the 'fundamental tenet' that copyright 'protection extends only to the author's original expression and not to the ideas embodied in that expression.'"[119] Bountiful Baby alleges that the baby sculptures are protectable expression because for each sculpture there are identifying features that make each one unique and distinguishable.[120]

"[C]ourts comparing works must first distill the protectable elements of the copyrighted work"[121] in what the Tenth Circuit deems the "'abstraction-filtration-comparison' test."[122] This test, "although sound in theory, is often difficult to apply in practice."[123]As a result, courts have utilized a more straightforward analysis when allegedly infringing products are allegedly identical to the plaintiff's product. If "viewing the original and copied images makes clear that Defendants have copied every single constituent element of Bountiful Baby's copyrighted"

---

[117] *Craft Smith, LLC v. EC Design, LLC*, 969 F.3d 1092, 1099 (10th Cir. 2020) (quoting *Feist Publ'ns Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)).
[118] Exs. GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, RR, SS, TT, UU, VV, WW, XX, Compl.
[119] *Blehm v. Jacobs*, 702 F.3d 1193, 1200 (10th Cir. 2012) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 832, 836 (10th Cir. 1993)); *see id.* ("[I]n looking at . . . two works of art to determine whether they are substantially similar, focus must be on the similarity of the *expression* of an idea or fact, not on the similarity of the facts, ideas or concepts themselves." (quoting *Rogers v. Koons*, 960 F.2d 301, 308 (2d Cir. 1992))).
[120] *See* Compl. ¶¶ 19–51.
[121] *Blehm*, 702 F.3d at 1200.
[122] *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1205 (10th Cir. 2014) (quoting *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996)).
[123] *Country Kids*, 77 F.3d at 1285.

sculptures, then there is a basis for the claim.[124] The court therefore analyzes each of the eighteen copyrighted sculptures with respect to dolls sold by OTD.

### (a)   Joseph Asleep Head, Joseph Arms, and Joseph Legs

The first alleged infringing work is the Joseph Asleep Head.[125] Comparing an image of the Joseph Asleep Head to images of OTD dolls, the court finds that the heads of the OTD dolls appear to be exact copies.[126] The respective facial features have the same proportions. The distance between the eyes, nose, and lips appear identical. The eyes have the same shape and comparative size. The eyebrow ridges have the same size, shape, and orientation. The nose has the same shape. And the forehead, cheeks, and chin have identical distinguishing features.

Next, Bountiful Baby alleges that OTD has infringed the Joseph Arms.[127] Analyzing the two sets of images, the court finds that the arms appear identical.[128] For the left hand, both dolls appear to have matching clenched fists. The overall shape is similar. As to the right hand, the fingers point in the same direction. The arms have the same creases at the wrists and the elbows. And the forearms have the same orientation, size, and shape.

Bountiful Baby also contends that the legs associated with the OTD dolls are copies of the Joseph Legs.[129] Examining the images, the court finds that the OTD dolls' legs appear identical to the Joseph Legs.[130] The relative sizes and proportions are the same. The toes on the

---

[124] *See Reborn Baby Mart*, 2022 WL 3108232, at *3. "Not every case requires an extensive abstraction-filtration-comparison analysis. Rather, 'the appropriate test to be applied and the order in which its various components are to be applied . . . may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the [works] at issue.'" *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1372 (10th Cir. 1997) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 834 n.12 (10th Cir. 1993)).
[125] U.S. Copyright Reg. No. VA 2-269-514.
[126] Compl. ¶¶ 19, 22; Ex. E, ECF No. 1-13, filed Mar. 30, 2022.
[127] U.S. Copyright Reg. No. VA 2-269-515.
[128] Compl. ¶¶ 19, 22, 27.
[129] U.S. Copyright Reg. No. VA 2-268-599.
[130] Compl. ¶¶ 19, 22, 27.

left foot are close together and curled in the same manner. The toes on the right foot are also close together and slightly curled. The two sets of feet point inward. Both sets of right legs have identical ankle creases. There is the same relative orientation between Bountiful Baby's sculpture and that of the counterfeit dolls. For these reasons, the court finds that OTD has infringed the Joseph Asleep Head, Joseph Arms, and Joseph Legs.

### (b)   Joseph Awake Head

Bountiful Baby alleges that OTD sells dolls with heads identical to the Joseph Awake Head.[131] In support, it offers an image of the copyrighted head and one of an OTD doll.[132] The court finds that the size, shape, and orientation of the lips, eyes, and cheeks are the same. The mouth is curled slightly downward in the same fashion. The facial features have similar proportions. The chin has the same shape, size, and orientation and proportions. Accordingly, the court finds that OTD has infringed the Joseph Awake Head.

### (c)   Nod Head, Nod Arms, and Nod Legs

For the Nod sculptures, Bountiful Baby asserts that OTD has infringed the Nod Head,[133] Nod Arms,[134] and Nod Legs.[135] After comparing images of the copyrighted sculptures and the allegedly counterfeit dolls, the court finds the following.[136] First, the heads associated with the OTD dolls have the same overall size and shape as the Nod Head. The eyes, nose, ears, cheeks,

---

[131] U.S. Copyright Reg. No. VA 2-269-513. In the section alleging infringement for the Joseph Awake sculptures, the Complaint depicts images of the copyrighted Joseph Arms and Joseph Legs. Compl. ¶ 24. However, the Joseph Arms and Joseph Legs are identical to the sculptures discussed for the Joseph Asleep sculptures. *Id.* ¶ 19. The court has previously discussed these two sculptures and found infringement.
[132] Compl. ¶¶ 24, 27; Ex. I, ECF No. 1-21, filed Mar. 30, 2022.
[133] U.S. Copyright Reg. No. VA 2-268-423.
[134] U.S. Copyright Reg. No. VA 2-265-478.
[135] U.S. Copyright Reg. No. VA 2-265-489.
[136] Compl. ¶¶ 30, 32; Ex. M, ECF No. 1-29, filed Mar. 30, 2022.

and chin have the same proportions and orientation. For both dolls, the mouth has the same distinctive appearance. Facial curves and indentations, particularly on the forehead and between the lips and nose, are identical. The eyes and eyebrows have the same curvature.

The Nod Arms also share key features with one of the OTD dolls.[137] Both fists are clenched. The fingers on the right hand for both sets of sculptures have the same orientation, especially the thumb and forefinger. Observing the left arm, the same crease exists on the wrist and below the first set of knuckles.

There are insufficient similarities between the Nod Legs and those on OTD dolls to support infringement. The left big toe on OTD dolls has a prominent upward flexion compared to the other toes. Yet the left toes on the Nod Legs are together and lack the same flexion. Likewise, the creases on the respective dolls' legs are dissimilar. In short, the Nod Legs and OTD doll legs do not appear to be the same or even similar. OTD infringed the Nod Head and Nod Arms, but not the Nod Legs.

### (d)   Darren Sleeping Head, Darren Arms, and Darren Legs

Bountiful Baby claims OTD has infringed the Darren Sleeping Head,[138] Darren Arms,[139] and Darren Legs.[140] After viewing the relevant images, the court makes the following findings.[141]

First, the court finds that the heads of OTD dolls have the same overall size and orientation with the Darren Head. The eyes, nose, and lips have the same shape, relative size, and proportions. There are identical folds below the eyes and on the neck. The cheeks and chin have

---

[137] ECF No. 1-29, at 285–93. Other arms depicted in Exhibit M do not appear sufficiently similar, with finger orientations different than those in the Nod Arms.
[138] U.S. Copyright Reg. No. VA 2-255-282.
[139] U.S. Copyright Reg. No. VA 2-281-257.
[140] U.S. Copyright Reg. No. VA 2-281-255.
[141] Compl. ¶¶ 33, 35; Ex. O, ECF No. 1-33, filed Mar. 30, 2022.

the same shape and proportions. Both mouths share the same features. And the area between the lips and nose have an identical crease.

Turning to the arms, the photos submitted by Bountiful Baby do not demonstrate that the Darren Arms and the arms on the OTD dolls are similar. The Darren Arms have hands where the fingers appear to be curled into loose fists. The allegedly infringing OTD dolls are depicted with one or more fingers or knuckles extended or with different orientation than those in the Darren Arms. They are not sufficiently similar.

Similarly, the images do not show that OTD has infringed the Darren Legs.[142] The photos of the Darren feet appear to depict toes that are not pointing upward or downward to a significant degree. In contrast, the feet on the OTD dolls have one big toe pointing pronouncedly upward, while the toes on the other foot are curled downward. The photos do not show a substantial similarity. In sum, OTD infringed the Darren Head, but not the Darren Arms or Darren Legs.

### (e)   Easton Head, Easton Arms, and Easton Legs

Next, Bountiful Baby alleges OTD sold dolls that infringed the Easton Head,[143] Easton Arms,[144] and Easton Legs.[145] In support, Bountiful Baby offers exemplary images of the copyrighted sculptures and one OTD doll.[146]

The respective heads appear identical. The facial features have the same size and proportion to each other. The eyes are shut on both sculptures. The creases above and below the

---

[142] Ex. O, ECF No. 1-33, filed Mar. 30, 2022.
[143] U.S. Copyright Reg. No. VA 2-271-682.
[144] U.S. Copyright Reg. No. VA 2-272-482.
[145] U.S. Copyright Reg. No. VA 2-272-481.
[146] Compl. ¶¶ 37, 39; Ex. R, ECF No. 1-39, filed Mar. 30, 2022.

eyes match. Both dolls' noses have the same size and shape. The cheeks and chins are identical. And the mouth and lips share distinctive features.

Turning to the Easton Arms, the first alleged infringing OTD doll has a very different hand with a closed or partially closed fist,[147] as opposed to the spread-finger Easton Arms photos.[148] Other hands and fingers appear similar, but because the photos supplied depict the hands in different orientations that obscure various parts of the fingers, it is not possible to determine if they infringe.[149]

As to the Easton Legs, the OTD dolls' legs appear identical. In particular, the left toes point in the same direction. The feet have the same shape and relative size. And the legs display a similar shape. OTD has thus infringed the Easton Head and Easton Legs.

### (f)   Elliott Head and Elliott Arms

For the Elliott Head[150] and Elliott Arms,[151] Bountiful Baby alleges OTD sold infringing dolls. The court finds that OTD has sold identical sculptures based on the images.[152] First, the heads have matching features. The eyes and eye sockets have the same size, shape, and proportions. The noses are identical. Both sets of mouths and lips appear the same. And the cheeks and chin are indistinguishable. Second, the arm sculptures have matching features. The fingers on both sets of right hands are oriented in the same manner. Specifically, the thumbs and forefingers display the same distinctive pinching effect. The elbow crease appears on both sets of

---

[147] ECF No. 1-39, at 371.
[148] Compl. ¶ 37.
[149] *See id.* ¶ 37; ECF No. 1-39, at 373.
[150] U.S. Copyright Reg. No. VA 2-284-512.
[151] U.S. Copyright Reg. No. VA 2-284-359.
[152] Compl. ¶¶ 40–41; Ex. S, ECF No. 1-41, filed Mar. 30, 2022.

sculptures. Finally, the shoulder sockets have matching characteristics. As a result, the court

finds OTD infringed both the Elliott Head and Elliott Arms copyrights.

### (g)    Blinkin Head, Blinkin Arms, and Blinkin Legs

Bountiful Baby asserts that OTD has infringed the Blinkin Head,[153] Blinkin Arms,[154] and

Blinkin Legs.[155] After comparing the relevant images, the court finds the following.[156]

First, the OTD dolls have identical heads to the Blinkin Head. The eyes, nose, lips, and

ears have the same size, shape, and proportions. The creases under the eyes are identical. The

lips have the same features, particularly the bottom lip. The chin and the folds above the chin are

identical. And the cheeks and forehead have the same shape.

Second, the court finds that some of the photos[157] show that OTD infringed the Blinkin

Arms. The right fingers have the same orientation, the same relative space between fingers, and

the fingers point in the same direction. Viewing the arms, both sets of sculptures have an

identical overall size and have the same creases. The similarities are enough to find infringement.

Last, the photos provided are insufficient to establish that the OTD dolls' legs infringe

the Blinkin Legs. Bountiful Baby supplied two photos of legs in its Blinkin sculpture section, but

the legs depicted in those photos do not appear similar.[158] Additionally, comparing those photos

with the OTD photos does not provide sufficient detail to determine infringement. For these

reasons, the court finds that OTD has infringed the Blinkin Head and Blinkin Arms.

---

[153] U.S. Copyright Reg. No. VA 2-272-484.
[154] U.S. Copyright Reg. No. VA 2-268-524.
[155] U.S. Copyright Reg. No. VA 2-268-519.
[156] Compl. ¶¶ 42, 44; Ex. U, ECF No. 1-45, filed Mar. 30, 2022.
[157] ECF No. 1-45, at 393–95. The second set of photos at 396–98 appears to depict a different set of hands.
[158] Compl. ¶ 42.

In sum, the court finds that OTD has infringed thirteen Bountiful Baby sculptures.[159]

## 2.    Damages

The court turns to the question of whether Bountiful Baby's allegations support damages, and if so, in what amount. The first issue is whether the damages sought are a sum certain. Because Bountiful Baby asks the court to award maximum statutory damages for OTD's willful infringement of registered works, the amount is not a sum certain.[160] "[A] court may not enter a default judgment without a hearing unless the amount claimed is a liquidated sum or one capable of mathematical calculation."[161] "[T]he hearing requirement can be satisfied by the submission of affidavits or other proper documentary evidence if doing so will create a record sufficient for the court to decide the matters before it."[162] Here, the affidavits and documentary evidence before the court are sufficient to establish such a record.[163]

Bountiful Baby requests the statutory maximum for each infringement. "Statutory damages are particularly appropriate in a case, such as this one, in which [the] defendant has failed to mount any defense or to participate in discovery, thereby increasing the difficulty of ascertaining plaintiff's actual damages."[164] Under the Copyright Act, the copyright owner may seek to recover "an award of statutory damages for all infringements involved in the action, with

---

[159] Joseph Asleep Head, Joseph Arms, Joseph Legs, Joseph Awake Head, Nod Head, Nod Arms, Darren Sleeping Head, Easton Head, Easton Legs, Elliott Head, Elliott Arms, Blinkin Head, and Blinkin Arms.

[160] Second Mot. for Default J. 25.

[161] *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983).

[162] *Minden Pictures*, 2023 WL 2243177, at *4 (quoting *Malluk v. Berkeley Highlands Prods., LLC*, No. 19-cv-01489, 2020 WL 1033339, at *2 (D. Colo. Mar. 3, 2020)).

[163] *See* Compl.; Second Mot. for Default J.; Platt Decl.; Pratt Decl.

[164] *Jackson v. Sturkie*, 255 F. Supp. 2d 1096, 1101 (N.D. Cal. 2003).

respect to any one work" for no more than $30,000 "as the court considers just."[165] The court

may award up to $150,000 for each infringed work if it finds willful infringement.[166]

### (a)   Number of Works Infringed

"The Copyright Act allows only one award of statutory damages against each defendant

for each 'work' infringed."[167] The Act defines "one work" as "all the parts of a compilation or

derivative work."[168] A "'compilation' is a work formed by the collection and assembling of

preexisting materials or of data that are selected, coordinated, or arranged in such a way that the

resulting work as a whole constitutes an original work of authorship."[169] Circuit courts are split

over what comprises "one work" and a "compilation." The D.C. Circuit, First Circuit, Seventh

Circuit, Ninth Circuit, and Eleventh Circuit apply the Independent Economic Value test.[170]

"[T]hose courts find independent 'works' where 'each expression . . . has an independent

economic value and is, in itself, viable.'"[171] Conversely, the Second Circuit has held that "all

parts of a compilation must be treated as one work for the purpose of calculating statutory

damages" with "no exception for a part of a compilation that has independent economic value,

and the [c]ourt will not create such an exception."[172]

---

[165] 17 U.S.C. § 504(c)(1).

[166] *Id.* § 504(c)(2).

[167] *Reborn Baby Mart*, 2022 WL 3108232, at *5; *see Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990) ("[S]tatutory damages are to be calculated according to the number of works infringed, not the number of infringements.").

[168] 17 U.S.C. § 504(c)(1).

[169] *Id.* § 101.

[170] *See Walt Disney Co.*, 897 F.2d at 569; *Sullivan v. Flora, Inc.*, 936 F.3d 562, 571 (7th Cir. 2019); *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 295 (9th Cir. 1997), *rev'd sub nom. on other grounds*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998); *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir. 1996); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1117 (1st Cir. 1993).

[171] *Reborn Baby Mart*, 2022 WL 3108232, at *6 (quoting *Gamma Audio & Video*, 11 F.3d at 1116–17).

[172] *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 142 (2d Cir. 2010).

The court does not need to address the circuit court split. Each Bountiful Baby sculpture is separately copyrighted and the individual sculptures may be shipped separately or together.[173] The process for making each sculpture is unique because "it requires different 3D scans and the work of a different artist to create the sculptures."[174] The sculptures have independent economic value because each one represents an independent artistic effort. In sum, the court finds that each sculpture "constitutes a separate 'work' for purposes of statutory damages."[175]

### (b)   Willfulness

If the court finds that the infringement was "committed willfully, the court in its discretion may increase the award of statutory damages" from $30,000 to $150,000 per infringement.[176] "In order to show that infringement was willful, the plaintiff must prove that the defendant either knew that his or her conduct constituted copyright infringement or recklessly disregarded the possibility that his or her conduct constituted copyright infringement."[177]

Several factors weigh in favor of a finding of willfulness. "[T]he evidence demonstrates that [OTD] misappropriated the . . . sculpture design[s] directly from Bountiful Baby . . . with the intent to deceive customers into purchasing their products."[178] OTD sold counterfeits of thirteen copyrighted sculptures. Next, OTD operated a distinct website[179] and even launched new websites when previous ones were disabled.[180] Finally, OTD acted brazenly. It continued to

---

[173] Pratt Decl. ¶ 17.

[174] *Id.* ¶¶ 4–6.

[175] *Reborn Baby Mart*, 2022 WL 3108232, at *6.

[176] 17 U.S.C. § 504(c)(2); *see DP Creations, LLC v. Lyn*, No. 2:22-cv-00200, 2022 WL 17821681, at *2 (D. Utah Dec. 20, 2022) ("The court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." (citation omitted)).

[177] *DP Creations, LLC v. Li*, No. 2:22-cv-00337, 2022 WL 17620388, at *2 (D. Utah Dec. 13, 2022) (citation omitted).

[178] *Reborn Baby Mart*, 2022 WL 3108232, at *7.

[179] www.otardgifts.com.

[180] Pratt Decl. ¶ 10.

market counterfeit dolls to the United States after the court's entry of a preliminary injunction.[181]

Accordingly, the court finds that OTD willfully infringed Bountiful Baby's sculptures.

### (c)   Statutory Damages

Bountiful Baby requests the statutory maximum for damages on each count of willfull infringement. "Courts consider certain factors in determining 'what is a just amount of statutory damages in the copyright infringement context,' including 'the expenses saved and the profits reaped,' 'the revenues lost by the plaintiff,' and 'whether the defendant's conduct was innocent or willful.'"[182] Additional factors are the potential for discouraging OTD from future infringement, general deterrence, and "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced."[183]

The first two factors support an award of more than a statutory minimum. OTD has made sales in the United States totaling at least $7,499.30,[184] and OTD continues to sell counterfeit goods online.[185] Also significant is the amount that OTD likely saved in development. Bountiful Baby avers that it has spent millions of dollars developing technology to create its unique sculptures.[186] In effect, OTD intentionally has misappropriated something not for sale because Bountiful Baby does not license its intellectual property.[187] While the exact amount of OTD's profits and Bountiful Baby's losses are unknown, "that [fact] is neither surprising nor dispositive

---

[181] ECF No. 30.
[182] *Disney Enters., Inc. v. VidAngel, Inc.*, No. 2:19-mc-00122, 2019 WL 1080880, at *1 (D. Utah Mar. 7, 2019) (quoting *Prod. Partners, LLC v. Aucoin*, No. CV 09-7504, 2011 WL 13190160, at *2 n.2 (C.D. Cal. Jan. 12, 2011)).
[183] *Klein-Becker USA, LLC v. Englert*, No. 2:06-cv-378, 2011 WL 147893, at *14 (D. Utah Jan. 18, 2011), *aff'd*, 711 F.3d 1153 (10th Cir. 2013).
[184] Platt Decl. ¶ 3.
[185] *See* Exs. 4–5, Platt Decl. (www.aliexpress.com).
[186] Pratt Decl. ¶ 5.
[187] *Id.* ¶ 18.

since much of the data is solely within the absent [OTD's] control."[188] Indeed, Bountiful Baby estimates that it loses up to $10,000 per day to counterfeiters like OTD.[189] Since Bountiful Baby is the "only reborn doll company that produces its dolls based on 3D scanned three-dimensional models of real infants,"[190] its "entire business . . . is [likely] threatened."[191]

The next four factors support a significant award in damages. OTD's conduct was willful. As to the potential for discouraging future infringement, an award significantly above the statutory minimum would send a clear message that continued infringement of reborn dolls is unacceptable. In particular, OTD has operated its website despite the court's preliminary injunction. General deterrence also supports a substantial award. This is not the first case involving a foreign company selling counterfeit reborn dolls.[192] A substantial damage award will send an appropriately strong message to potential counterfeiters. Finally, OTD has exhibited no interest in remediating its conduct. In essence, OTD "deliberately used Bountiful Baby's hard-earned intellectual property to make a quick profit on the internet."[193]

For these reasons, Bountiful Baby merits an award above the statutory minimum. But maximum statutory damages are not warranted. The court notes that the record reflects a relatively small number of OTD sales in the United States.[194] As a result, the court finds as appropriate an award of $780,000 for OTD's willfull infringement.[195]

---

[188] *Reborn Baby Mart*, 2022 WL 3108232, at *7.
[189] Pratt Decl. ¶ 7.
[190] *Id.*
[191] Second Mot. for Default J. 23.
[192] *See DP Creations, LLC v. Xiaoxia*, No. 2:22-cv-00765, 2023 WL 399865 (D. Utah Jan. 25, 2023); *Lyn*, 2022 WL 17821681; *Li*, 2022 WL 17620388; *Reborn Baby Mart*, 2022 WL 3108232.
[193] *Reborn Baby Mart*, 2022 WL 3108232, at *8.
[194] *See* Platt Decl. ¶ 3.
[195] Damages of $60,000 each for the thirteen counts of infringement.

## II.   Permanent Injunction

The court granted a preliminary injunction on May 9, 2022 against ADC, AUS, OTD, RDG, and NPK.[196] On November 2, 2022, the court entered a permanent injunction against ADC.[197] Bountiful Baby now renews its request for a permanent injunction against Defendants. Because Bountiful Baby has not demonstrated that the court has personal jurisdiction over AUS, RDG, or NPK, the court decides this issue as to OTD only.[198]

"Section 502(a) of the Copyright Act authorizes a court to issue a permanent injunction on such terms as it may deem reasonable to prevent or restrain infringement of a copyright."[199] "The Supreme Court [has] stated that courts must apply the 'traditional four-factor framework' which governs the award of injunctive relief" to permanent injunctions.[200] The court considers "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) [whether] the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) [whether] the injunction, if issued, will . . . adversely affect the public interest."[201] The "[p]laintiff must establish all four elements, and the [c]ourt does not apply any presumption in [the p]laintiff's favor . . . ."[202]

---

[196] ECF No. 30.

[197] ECF No. 42.

[198] *See Paccar Int'l, Inc. v. Commercial Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1066 (9th Cir. 1985) (vacating order granting a preliminary injunction because the district court did not have personal jurisdiction); *Wilson v. Stowers*, No. CV 21-06306, 2022 WL 6563723, at *1 (C.D. Cal. July 7, 2022), *R. & R. adopted*, 2022 WL 6445561 (C.D. Cal. Oct. 5, 2022) ("The Court does not have jurisdiction to order injunctive relief that would require directing individuals who are not before the court to take action.").

[199] *Purjes v. DigiNext, LLC*, No. 2:19-cv-00309, 2020 WL 1276970, at *4 (D. Utah Mar. 17, 2020) (cleaned up).

[200] *Bushnell, Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1260 (D. Kan. 2009) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 394 (2006)).

[201] *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (citation omitted).

[202] *Minden Pictures*, 2023 WL 2243177, at *5.

The first factor supports a permanent injunction. OTD has infringed thirteen copyrighted sculptures. For the second factor, Bountiful Baby contends that OTD's infringement causes irreparable harm. The "Tenth Circuit has 'held that a plaintiff satisfies the irreparable harm requirement by demonstrating a significant risk that he or she will experience harm that cannot be compensated after the fact by monetary damages.'"[203] "[I]rreparable harm findings are based on such factors as the difficulty in calculating damages, the loss of a unique product, and existence of intangible harms such as loss of goodwill or competitive market position."[204]

Bountiful Baby has shown irreparable harm. The court cannot determine the exact number of counterfeit sales. But the lack of a precise amount is not fatal.[205] What is more, the inability to do so is occasioned by OTD's decision not to appear and defend, which would include discovery.[206] Bountiful Baby has, however, lost a unique product through OTD's sales of counterfeit dolls. Specifically, Bountiful Baby argues that OTD's actions lead to a loss in "customers, market share, and reputation," "devalues Bountiful Baby's exclusive rights in its copyrighted sculptures," and deceives customers because Defendants offer inferior products.[207] OTD "has[] demonstrated a pattern of creating new websites to facilitate infringement, thus raising a likelihood of continued infringement that monetary damages cannot remedy."[208]

---

[203] *Sierra R.V. Corp. v. Heartland Recreational Vehicles, LLC*, No. 1:19-cv-00014, 2019 WL 2716541, at *2 (D. Utah June 28, 2019) (quoting *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009)).
[204] *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264 (10th Cir. 2004).
[205] *See Sw. Stainless*, 582 F.3d at 1191 ("A district court may find irreparable harm 'based upon evidence suggesting that it is impossible to precisely calculate the amount of damage plaintiff will suffer.'" (quoting *Equifax Servs., Inc. v. Hitz*, 905 F.2d 1355, 1361 (10th Cir. 1990))).
[206] *See* Docket.
[207] Compl. ¶¶ 56–57.
[208] *Reborn Baby Mart*, 2022 WL 3108232, at *8; Pratt Decl. ¶ 10.

The third factor also supports the issuance of a permanent injunction. For this factor, the court must "balance the harms that would result from denying the injunction against the harms that would result from granting the injunction."[209] This is not a close call. OTD intentionally operates on a website that sells counterfeit dolls. "[T]here is no hardship to [OTD] because a permanent injunction will merely prevent [it] from engaging in further unlawful activity."[210] Harm to Bountiful Baby far outweighs any harm to OTD.

Finally, a permanent injunction will not negatively affect public interest. "To the contrary, it will protect copyrighted material and encourage compliance with the Copyright Act."[211] Such an injunction will not only help safeguard Bountiful Baby's intellectual property, but it will safeguard potential consumers. To that end, the court grants Bountiful Baby's request for a permanent injunction against OTD. The court denies the request for a permanent injunction against AUS, RDG, or NPK. Further, Bountiful Baby has had two opportunities to show the court can exercise personal jurisdiction over AUS, RDG, and NPK. Because it has not met its burden, the court dissolves the preliminary injunction[212] as to these three defendants.

---

[209] *Utah Env't Cong. v. U.S. Bureau of Land Mgmt.*, 119 F. App'x 218, 220 (10th Cir. 2004) (unpublished).
[210] *Reborn Baby Mart*, 2022 WL 3108232, at *8; *see Gen. Motors Corp. v. Urban Gorilla, LLC*, 500 F.3d 1222, 1229 (10th Cir. 2007) ("[W]hen the case for infringement is clear, a defendant cannot avoid a[n] . . . injunction by claiming harm to a business built upon that infringement.").
[211] *Lyn*, 2022 WL 17821681, at *4 (citing *Autoskill Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993), *overruled on other grounds by TW Telecom Holdings Inc. v. Carolina Internet Ltd.*, 661 F.3d 495 (10th Cir. 2011) ("In copyright cases . . . this factor normally weighs in favor of the issuance of an injunction because the public interest is the interest in upholding copyright protections.").
[212] ECF No. 30.

### III.   Attorney's Fees and Costs

In its previous memorandum decision and order, the court awarded Bountiful Baby $52,477.59 in fees and costs.[213] Bountiful Baby now requests entry of the same award jointly and severally against ADC and Defendants.[214]

"The Copyright Act expressly permits the court to award the prevailing party its 'full costs,' including 'reasonable attorney's fees.'"[215] Bountiful Baby has prevailed in its copyright infringement action. Even so, "[f]ees under § 505 are not awarded 'as a matter of course.'"[216] "The Supreme Court has recognized several nonexclusive factors in determining reasonable fees: 'frivolousness, motivation, objective unreasonableness . . . and the need in particular circumstances to advance considerations of compensation and deterrence.'"[217] The court must consider whether it should grant fees and costs and, if so, determine a reasonable amount.

OTD has shown bad faith because it willfully infringed thirteen Bountiful Baby copyrighted sculptures. By successfully marketing its counterfeit goods to the United States, it has collected revenue. "Under the Copyright Act, an award of fees is appropriate to promote the goal of deterrence where the evidence supports a finding of willfulness."[218] Fees and costs will

---

[213] Default J. Order 22.

[214] Second Mot. for Default J. 26, 28; *see* ECF No. 59.

[215] *Reborn Baby Mart*, 2022 WL 3108232, at *9; 17 U.S.C. § 505; *see Marx v. Gen. Revenue Corp.*, 668 F.3d 1174, 1179 (10th Cir. 2011), *aff'd*, 568 U.S. 371 (2013). The court notes that it generally "may not award attorney's fees without holding a hearing to determine the amount." *Venable*, 721 F.2d at 300. However, the court finds that the detailed declaration of counsel and time reports provide substantial documentary evidence from which a well-supported determination of fees may be made. *See* Decl. of Brian N. Platt in Support of Claim for Att'y Fees ¶¶ 1–11 ("Platt Decl. for Fees"), ECF No. 50, filed Mar. 16, 2023; Ex. A, Platt Decl. for Fees.

[216] *Vient v. Ancestry*, No. 2:19-cv-51, 2021 WL 2141768, at *2 (D. Utah May 26, 2021) (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 533 (1994)).

[217] *Id.* (quoting *Fogerty*, 510 U.S. at 534 n.19).

[218] *Reborn Baby Mart*, 2022 WL 3108232, at *9 (*quoting Tu v. TAD Sys. Tech. Inc.*, No. 08-cv-3822, 2009 WL 2905780, at *8 (E.D.N.Y. Sept. 10, 2009)).

help compensate Bountiful Baby. Plus, it will "further the goal of deterrence" as to OTD and potential infringers.[219] Bountiful Baby is thus entitled to reasonable fees and costs.

"A court will generally determine what fee is reasonable by first calculating the lodestar—the total number of hours reasonably expended multiplied by a reasonable hourly rate—and then adjust the lodestar upward or downward to account for the particularities of the suit and its outcome."[220] Counsel charge reasonable hourly rates given their experience and expertise.[221] And counsel also offer detailed logs showing hours worked and a description of the work performed.[222] The court finds that the fees are reasonable based on the hours and rates.

Consequently, the court amends its prior award of fees and costs to Bountiful Baby and against ADC to now include OTD, jointly and severally, in the amount of $52,477.59.

### ORDER

Accordingly, the court GRANTS IN PART AND DENIES IN PART Plaintiff's Second Motion for Default Judgment[223] and AMENDS the court's Order Granting in Part and Denying in Part Plaintiff's Motion for Default Judgment.[224]

1. The court GRANTS IN PART AND DENIES IN PART the motion for default judgment.

   a. The court previously granted default judgment against ADC in the amount of $1,050,000.

   b. The court GRANTS default judgment against OTD in the amount of $780,000.

---

[219] *Id.*
[220] *Snyder v. Acord Corp.*, 811 F. App'x 447, 464 (10th Cir. 2020) (unpublished) (quoting *Zinna v. Congrove*, 680 F.3d 1236, 1242 (10th Cir. 2012)).
[221] *See* Platt Decl. for Fees ¶¶ 6–10 (between $250 and $525 per hour).
[222] Ex. A, Platt Decl. for Fees.
[223] ECF No. 57.
[224] ECF No. 43.

    c.      The court DENIES the motion for default judgment as to AUS, RDG, and NPK for lack of personal jurisdiction.

2.    The court GRANTS IN PART AND DENIES IN PART Plaintiff's second motion for a permanent injunction.[225]

    a.      The court GRANTS the motion for a permanent injunction against OTD pursuant to a separately filed order.

    b.      The court DENIES the motion for a permanent injunction against AUS, RDG, and NPK.

    c.      The court DISSOLVES the preliminary injunction against AUS, RDG, and NPK.

3.    The court AWARDS Plaintiff $52,477.59 in attorney's fees and costs against ADC and OTD, jointly and severally. This award replaces the prior attorney's fees and costs award against ADC individually.[226]

Signed May 17, 2023.

BY THE COURT

_____

David Barlow
United States District Judge

---

[225] ECF No. 57.
[226] ECF No. 43.